**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LITE COOKIES LIMITED, d/b/a JOSEPH'S**
**LITE COOKIES, d/b/a L&J LITE COOKIES**,

    Plaintiff,

    v.                                                                                                                      Civ. No. 08-1172 BB/WDS

**TASSY & ASSOCIATES, INC., d/b/a T&T**
**CONSULTING, a/k/a T&T CONSULTING &**
**ENGINEERING, INC.,**

    Defendant.

**MEMORANDUM OPINION**

    This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 108). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be *DENIED in part* and *GRANTED in part*.

**Summary of Relevant Facts**

    Plaintiff is a cookie baking operation with factories in New Mexico and Florida.  One of the commercial ovens in the New Mexico factory was severely damaged in an accident and required extensive repairs.  Plaintiff's insurance company, Safeco, elected to repair rather than replace the oven.  Safeco ultimately retained Defendant to make the repairs.

    Plaintiff and Defendant reached an agreement as to the repairs for the oven.  They each signed a contract that detailed the scope of work and specific repairs to be made.  Doc. 1-3. Defendant wrote that it could put the oven "back in operation."  *Id.*, p. 1.  In the warranty section of the contract, Defendant agreed that it would "warranty its workmanship on this equipment for the period of 90 days from start up against components failures under normal use.  The warranty will be limited to the equipment and work."  Doc. 1-3, p. 4.

    Defendant endeavored to make the repairs listed in the contract; Defendant's employees performed repairs on site at the cookie factory and in Defendant's shop in Illinois.  After making

the repairs, the oven still did not function properly. It produced cookies that did not meet FDA size and weight requirements. Plaintiff reported the problem to Defendant, and Defendant sent an engineer to Plaintiff's New Mexico factory in order to make further repairs to the oven. More than one year after the repair contract was signed, the oven was once again up and running.

Plaintiff then filed suit in this Court, alleging breach of contract, New Mexico Unfair Practices Act violations, and professional negligence. Doc. 71. After nearly three years of litigation, the matter still has not been resolved. Defendant has moved the Court for Summary Judgment on all counts of Plaintiff's complaint. Doc. 108.

## Jurisdiction

The Court has jurisdiction over this suit pursuant to 42 U.S.C. § 1332 ("diversity jurisdiction"). Plaintiff maintains cookie factories in New Mexico and Florida, while Defendant is based in Illinois. The amount in controversy well exceeds $75,000.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

I. Malicious and/or Wanton Breach of Contract

Plaintiff alleges that Defendant breached its contractual obligations by failing to restore the oven to its original cookie-baking capacity. Defendant counters that it "had no obligation to fix problems that arose after it repaired [Plaintiff's] oven, other than replacing parts." Doc. 108, p. 5. However, the contract between the parties explicitly states that Defendant warranties "equipment and *work*." Doc. 1-3, p. 4 (emphasis added). Work is a synonym for labor. *Black's Law Dictionary*, 1014 (4th ed. 1968).

The plain language of the contract directly contradicts Defendant's belief that it warrantied parts and not labor. "[W]here the terms of an agreement are plainly stated, the intention of the parties must be ascertained from the language used." *Levenson v. Mobley*, 744 P.2d 174, 176-177 (N.M. 1984). "Absent a finding of ambiguity, provisions of a contract need only be applied, rather than construed or interpreted." *Id.* at 177. Thus, there is no reason to look beyond the terms of the contract. Defendant did warranty the equipment it replaced and its repair work on the oven. Doc. 1-3, p. 4 .

Moreover, Defendant agreed that it would "definitely help to put that baking oven and depositor back in operation." Doc. 1-3, p. 1. The record indicates that the oven did not produce cookies of the appropriate size and weight after Defendant made repairs. Plaintiff maintains that such inadequate performance, on its face, shows that the oven was not "back in operation." Although the contract does not contain cookie size and weight specifications, a fact-finder could infer that the term "back in operation" means production of the same type of cookies, which meet government requirements. *Cf. Woodbury Chemical Co. v. Holgerson,* 439 F.2d 1052, 1053-54 (10th Cir. 1971) (existence of federal specifications provided evidence supporting finding of express or implied warranties). There is simply no other way to read the terms. If a machine cannot produce the commercial item for which it was designed, then it has no use other than as scrap metal.

Viewing the evidence in the light most favorable to Plaintiff, there remains a material question of fact as to whether Defendant breached its contract with Plaintiff. As such, summary judgment on Plaintiff's breach of contract claim is inappropriate at this stage.

Count I of Plaintiff's complaint brings suit for "malicious and/or wanton breach of contract"; the Court will assume that the cause of action is for breach of contract, while malicious or wanton breach refers to the requested damages. "New Mexico law allows a plaintiff who establishes a cause of action in law to recover punitive damages as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, oppressive, or fraudulent and in bad faith." *Bogle v. Summit Investment Co.*, LLC, 107 P.3d 520, 530 (N.M.App. 2005). "[P]unitive damages may be recovered for breach of contract when the defendant's conduct has been sufficiently malicious, oppressive, fraudulent, or committed recklessly with a wanton disregard for the plaintiff's rights." *Id*. "An intentional breach by itself ordinarily cannot form the predicate for punitive damages, not even when the breach is flagrant, that is, when there is no question that the conduct breaches the contract, even if the other party will clearly be injured by the breach." *Id*. Rather, "when the breaching party intends to inflict harm on the non-breaching party or engages in conduct which violates community standards of decency, punitive damages are appropriate." *Id*.

Plaintiff asserts that Defendant knew it was breaching the contract by not properly repairing the oven. *See, e.g.*, Doc. 71 ¶ 41. However, intentional breach of contract by itself is not enough to support an award of punitive damages. *See id.* at 531 (plaintiff was not entitled to punitive damages where he only showed Defendant's knowledge of wrong-doing). Plaintiff must show that Defendant's acts were without justification. *See id.*

Defendant has not provided a justification for breaching the contract, other than to assert that its labor was not under warranty. As discussed above, the plain language of the contract indicates that the labor *was* covered in the warranty. Without a justification for breaching the contract, a jury could find that punitive damages were appropriate in this case. The Court will deny summary judgment as to Count I of Plaintiff's Amended Complaint.

II. New Mexico Unfair Practices Act Violations

Plaintiff makes multiple claims against Defendant pursuant to New Mexico's Unfair Practices Act, NMSA § 57-12-1 *et seq*. The Court will address each in turn.

A. Deceptive representations in connection with services, § 57-12-2(D)(4)

In the repair contract, Defendant stated that it would repair the oven in 8-10 weeks and that the repairs would cost about $400,000. Doc. 1-3. However, the oven was not repaired until more than a year after the contract was signed. Plaintiff argues this fact alone supports its claim pursuant to NMSA § 57-12-2(D)(4). Defendant counters that the long delay in repairing the oven "was due to unexpected problems and additional work required once [Defendant] began its repair and opened the oven." Doc. 121, p. 16.

"New Mexico courts have emphasized that the gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 749 F.Supp.2d 1235, 1275 (D.N.M. 2010). Plaintiff has failed to present any evidence that Defendant's original estimate of time needed to make the repairs was knowingly false. As Defendant noted, the estimate was based on its assessment of the oven at the time it drafted the contract. The time required for repairs changed once the actual state of the oven came to light. Without any evidence that Defendant knew, at the time it signed the contract, that the repairs would take longer than 10 weeks, the Court cannot hold that there is a material question of fact remaining in Plaintiff's deceptive representations claim. *See Eck*, 256 F.3d at 1016-17 (the nonmoving party must show, at a minimum, an inference of the existence of each essential element of the case). The Court will grant Defendant's Motion for Summary Judgment as to this element of Count II of Plaintiff's complaint.

B. Representing that services have characteristics or benefits that they do not have, § 57-12-2(D)(5)

Plaintiff argues that Defendant made representations that "far exceeded what [it] could in reality offer." Doc. 116, p. 19.  The fact that the repairs took over one year to complete is the basis for this element of Count II of Plaintiff's complaint.  *Id*.  Additionally, Plaintiff argues that Defendant's statement that Tomas Tassy was an engineer "conferred [Defendant's] services with a status which in fact [Tomas Tassy] did not possess." Doc. 116, p. 20.

Defendant states that the repairs took longer than expected due to problems with the oven that were not discovered until it began the repair process.  It also argues that Plaintiff did not rely on Tomas's statement that he is an engineer when contracting with Defendant, so that misrepresentation is irrelevant to this claim.  Furthermore, Defendant argues that Mr. Tassy did not misrepresent himself because he did not state he had an engineering degree or was licensed as an engineer; rather, he stated that he is an engineer in the oven-repair industry, which is apparently routine practice among workers in the industry.  Doc. 121, p. 15.

Plaintiff has not provided any evidence to show that Defendant knowingly misrepresented the services it could provide.  Although there was certainly confusion as to Mr. Tassy's professional status, there is nothing in the record to show he knowingly misrepresented himself.  He did not proclaim to have an academic degree or professional licensure, nor did he include the initials "P.E." for "Professional Engineer" after his name.  Instead, he used the terminology common to his industry and referred to himself generally as an engineer.  Doc. 121-2, ¶ 4.  Without evidence of a knowing mispresentation, the Court must grant Defendant's Motion for Summary Judgment as to this element of Count II of Plaintiff's complaint.  *See Eck*, 256 F.3d at 1016-17 (the nonmoving party must show, at a minimum, an inference of the existence of each essential element of the case).

C. Representing that services are of a particular standard or quality if they are of another, § 57-12-2(D)(7)

Plaintiff did not make any allegations specific to this claim, so the Court will assume its arguments for similar claims apply to this one as well.  As discussed above, Plaintiff must present

some evidence to show that Defendant made a knowing misrepresentation as to the standard or quality of its services. Plaintiff has not provided such evidence, so the Court will grant Defendant's Motion for Summary Judgment on this element of Plaintiff's Unlawful Practices Act ("UPA") claim.

      D. Stating that services, replacements or repairs are needed if they are not needed, § 57-12-2(D)(16)

Plaintiff did not make any allegations specific to this claim. On the contrary, the record contains ample evidence that Plaintiff's oven required extensive services, repairs, and replacement parts. The Court will grant Defendant's Motion for Summary Judgment on this element of Plaintiff's UPA claim.

      E. Failing to deliver the quality of services contracted for, § 57-12-2(D)(17)

Plaintiff and Defendant contracted for repairs that would make the oven functional. Plaintiff asserts that Defendant failed to deliver a functional quality of services where the oven did not produce the appropriate size of cookies and contained parts that endangered Plaintiff's employees. The record contains evidence that the oven was not functioning properly for over a year, as well as evidence that the oven was potentially dangerous to Plaintiff's employees after the initial repairs were made. *See* Doc. 116-11. However, there is also evidence in the record that Defendant made multiple attempts to repair the oven, including sending an engineer to Plaintiff's factory after the initial repairs failed. Although the repairs were not successful for quite some time, there is no evidence that Defendant was knowingly deceptive in its attempt to deliver repair services. *See Guidance Endodontics, LLC*, 749 F.Supp.2d at 1275 (UPA claims require "misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services"). The Court will grant Defendant's Motion for Summary Judgment as to this aspect of Count II of Plaintiff's complaint.

F. Committing acts or practices in connection with offering services which to Plaintiff's detriment results in a gross disparity between the value received and the price paid. § 57-12-2(E)(2)

Plaintiff did not make any allegations specific to this claim. The record contains evidence that Plaintiff's oven did eventually work, though it took more than a year of repairs to return it to a working condition. Plaintiff did not dispute the $400,000 cost of repairs, nor did it indicate that the value of its working oven would be worth less than $400,000. As such, there are no facts in the record to support this claim. The Court will grant Defendant's Motion for Summary Judgment on this element of Plaintiff's UPA claim.

III. Negligent Misrepresentation in the Inducement

"Negligent misrepresentation is an action governed by the general principles of the law of negligence. Absent fraud, negligent misrepresentation requires a duty on the part of the person furnishing information; the person receiving the information must have a right to rely on it." *R.A. Peck, Inc. v. Liberty Federal Sav. Bank*, 766 P.2d 928, 932 (N.M.App. 1988) (internal citations omitted). "A fraudulent misrepresentation claim, to be successful, requires that the injured party show that the other party (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies." *Saylor v. Valles*, 63 P.3d 1152, 1158 (N.M.App. 2002).

Plaintiff's negligent misrepresentation claims fall into two categories: Defendant's misrepresentation as to the oven repairs and Mr. Tassy's misrepresentation as to his qualifications as an engineer. Regarding the oven repairs, Plaintiff argues that Defendant misrepresented the fact that it could repair the oven in 8-10 weeks. Doc. 116, p. 119. It is undisputed that it took Defendant over a year to fully repair the oven. However, there is no evidence in the record that Defendant "made a misrepresentation of fact intentionally or with reckless disregard for the truth"–an essential element of a negligent misrepresentation claim.

*Saylor,* 63 P.3d at 1158.  Rather, the record contains evidence that Defendant did not know the extent of the damage to the oven until it began making the repairs.  Doc 121-2, ¶ 8.  Its estimate of 8-10 weeks was based on its assessment of the oven before "opening it up" for repairs, and Defendant attempted to fix the oven after the initial repairs failed.  While Defendant was clearly mistaken as to the condition of the oven, Plaintiff has failed to provide evidence that Defendant knew or was recklessly unaware that it would take longer than 10 weeks to repair the oven.

As discussed above, there is nothing in the record to show Mr. Tassy knowingly or recklessly misrepresented himself as a licensed engineer.  Without evidence that Defendant knowingly or recklessly misrepresented facts about the oven repair or Mr. Tassy's qualifications, the Court must grant Defendant's Motion for Summary Judgment as to Count III of Plaintiff's complaint.

IV. Professional Negligence

Plaintiff classifies Defendant's services as "professional," and Defendant does not challenge that classification.  "New Mexico holds providers of professional services to a higher standard of care than other non-professional occupations."  *Farmers Alliance Mut. Ins. Co. v. Naylor*, 480 F.Supp.2d 1287, 1291 (D.N.M. 2007).  "When professional services arising from contract are substandard, a plaintiff may bring a cause of action for malpractice based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill."  *Adobe Masters, Inc. v. Downey*, 883 P.2d 133, 134 (N.M. 1994).  The standard of care for professional services "is measured by the duty to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances."  *New Mexico Public Schs. Ins. Authority v. Arthur J. Gallagher & Co.,* 198 P.3d 342*,* 348 (N.M. 2008).

"In professional negligence cases, both breach of the implied warranty to use reasonable skill under contract law and negligence resulting in a finding of malpractice must be proved by expert testimony *unless* the case is one where exceptional circumstances within the common experience or knowledge of a layman are present."  *Adobe Masters, Inc.*, 883 P.2d at 135

(emphasis in the original).  The parties agree that the standard of care for repair of a commercial oven is not "within the common experience or knowledge of a layman."  As such, expert testimony is needed to show Defendant's professional negligence in this case.

Plaintiff has provided the opinion of two experts in the field of commercial oven repair, Manuel Campos Jr. and Timothy Gallus, in support of its claim for professional negligence.  In his notarized letter regarding the safety of Plaintiff's oven, Mr. Campos described several potential violations of the Occupational Safety and Health Administration ("OSHA") standards.  Doc. 116-11. He noted that if the oven were put into operation in the same state he observed, it "would be of great detriment to the safety of the employees."  *Id.*, p. 1.  Mr. Gallus also assessed Plaintiff's oven after repairs had been performed, and he wrote a letter to Plaintiff outlining his observations.  Doc. 108-5.  Although he did not address specific laws or standards, he did opine that the oven was not in running condition and would need additional repairs.  *Id.*

Mr. Gallus and Mr. Campos did not explicitly address the standard of care owed by oven repair engineers, but they did discuss the state of the oven and whether it was functional.  Mr. Campos stated that several components of the oven did not meet OSHA standards.  In sum, they both were of the opinion that the repairs did not meet the industry standards because the oven was unsafe and not functioning.  This information could be used to show that Defendant did not "apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *New Mexico Pub. Schs. Ins. Authority,* 198 P.3d at 348 (N.M. 2008).  Although not explicit, Mr. Campos's and Mr. Gallus's expert opinions suggest that Defendant did not deliver the standard of care required of the relevant profession.  Thus there remains a material question of fact as to whether Defendant breached its duty to exercise a professional standard of care when it made repairs to Plaintiff's oven.  Defendant's Motion for Summary Judgment on Count IV of Plaintiff's complaint is denied.

**Conclusion**

Pursuant to the foregoing, the Motion for Summary Judgment will be *GRANTED* as to Counts II and III.  It will be *DENIED* as to Counts I and IV.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE